IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF IOWA
CENTRAL DIVISION

ROXANNE GILLUM,                    )        NO. 4:09-cv-00382-RAW
                                   )
         Plaintiff,                )
                                   )        RULING ON DEFENDANT'S
    vs.                            )        MOTION FOR SUMMARY JUDGMENT
                                   )
CITY OF DES MOINES, IOWA,          )
                                   )
         Defendant.                )


         The above resisted motion [27] is before the Court.
Plaintiff, Roxanne Gillum, filed a complaint on September 24, 2009
asserting employment discrimination on the basis of sex against her
former employer, the City of Des Moines, Iowa ("the City").  Ms.
Gillum sued under Title VII of the Civil Rights Act of 1964, 42.
U.S.C. § 2000e, *et seq.*, as well as the Iowa Civil Rights Act
(ICRA), Iowa Code Ch. 216.  Ms. Gillum, a former City public works
employee, alleges that because of her sex she was not selected for
promotion from a 2005 promotion eligibility list and was not placed
on the list in 2008 (thus denying the opportunity for promotion).
Following the 2008 decision she resigned which she alleges was a
constructive discharge.

         Defendant filed a Motion for Summary Judgment [27].  In
support of its motion, Defendant submitted a Statement of Material
Facts [27-1], a Brief [27-15], and an appendix containing over 300
pages [27-2 to 27-14, 29 to 29-6, 30].  In response, Ms. Gillum

filed a Resistance [37].  In support of her resistance, Ms. Gillum filed a Statement of Additional Material Facts [38], a Brief [39-1], and an appendix containing 164 pages [40 to 40-6].  Ms. Gillum did not respond to Defendant's Statement of Material Facts. Defendant filed a Brief in Reply to Plaintiff's Resistance [43]. This case was referred to the undersigned for all further proceedings pursuant to 28 U.S.C. § 636(c).  The Court has federal question and civil rights jurisdiction under 28 U.S.C. §§ 1331, 1343(a) and supplemental jurisdiction of the ICRA claim under 28 U.S.C. § 1367(a).  The matter is fully submitted and the Court rules as follows.

## I.

## SUMMARY JUDGMENT

A party is entitled to summary judgment if the affidavits, pleadings, and discovery materials demonstrate "there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law." *Roeben v. BG Excelsior Ltd. Partnership*, 545 F.3d 639, 642 (8th Cir. 2008); *see EEOC v. Trans States Airlines, Inc.*, 462 F.3d 987, 991 (8th Cir. 2006); Fed. R. Civ. P. 56(c).  The Court must view the facts in the light most favorable to the party resisting summary judgment, and give that party the benefit of all reasonable inferences which can be drawn from them, "that is, those inferences which may be drawn without resorting to speculation." *Mathes v. Furniture Brands*

*Int'l, Inc.*, 266 F.3d 884, 885-86 (8th Cir. 2001) (citing *Sprenger v. Federal Home Loan Bank of Des Moines*, 253 F.3d 1106, 1110 (8th Cir. 2001)); *see Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986); *Howard v. Columbia Public Schl. Dist.*, 363 F.3d 797, 800 (8th Cir. 2004) ("unreasonable inference or sheer speculation" not accepted as fact). The resisting party must "go beyond the pleadings and by affidavits, depositions, answers to interrogatories, and admissions on file, designate specific facts showing that there is a genuine issue of material fact." *Rouse v. Benson*, 193 F.3d 936, 939 (8th Cir. 1999).

Our local rules contain some procedural requirements for summary judgment proceedings. Among them is a requirement that "[a] party resisting a motion for summary judgment must, within 21 days after service of the motion, file contemporaneously all of the following: ... A response to the statement of material facts in which the resisting party expressly admits, denies, or qualifies each of the moving party's numbered statements of fact." LR 56.b.2. "The failure to respond, with appropriate citations to the appendix, to an individual statement of material fact constitutes an admission of that fact." LR 56.b. Plaintiff's resistance does not include a response to Defendant's statement of facts, leaving them admitted. *See Libel v. Adventure Lands of Am., Inc.*, 482 F.3d 1028, 1032-33 (8th Cir. 2007). Indeed, there does not appear to be much dispute about the facts put forward by Defendant.

The Court is aware that summary judgment is rarely appropriate in employment discrimination cases and should "seldom be granted ... unless all the evidence points one way and is susceptible to no reasonable inferences sustaining the position of the nonmoving party." *Hildman v. Transkrit Corp.*, 145 F.3d 986, 990 (8th Cir. 1998). Because employment discrimination cases are often based on inferences, "'summary judgment should not be granted unless the evidence could not support any reasonable inference' of discrimination." *Breeding v. Arthur J. Gallagher & Co.*, 164 F.3d 1151, 1156 (8th Cir. 1999) (quoting *Lynn v. Deaconess Med. Ctr.-W. Campus*, 160 F.3d 484, 486-87 (8th Cir. 1998)). However, "the plain language of Fed. R. Civ. P. 56(c)[56(a) post-12/1/10] mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Rensink v. Wells Dairy, Inc.*, ___ F. Supp. 2d ___, ___, No. 09-CV-4035-DEO, 2010 WL 3767154, *9 (N.D. Iowa Sept. 15, 2010).

## II.

### FACTUAL BACKGROUND

Ms. Gillum began working for the City of Des Moines as a summer employee during the summers of 1986, 1987, 1988, and 1989. Ms. Gillum began working in a full-time, permanent civil service position with the City on May 29, 1989. On August 6, 1990, Ms.

4

Gillum was promoted to a position with the City's Public Works Department. She worked full-time in the Public Works Department for 18 years, during which she received a number of promotions. While employed by the Public Works Department in 1999, Ms. Gillum took business classes at the Des Moines Area Community College to improve her promotional chances with the City.

Three job openings became available in the spring of 2005 for the position of Section Chief in the Public Works Department, and Ms. Gillum submitted an application for these openings. After an initial screening process, twenty-four of the applicants deemed "minimally qualified based on their experience and education," including Ms. Gillum, were interviewed by a panel consisting of Michael Carter, Jay Bennett, Bruce Braun, and Lee Boisen. (Stowe Depo. [27-8] at 11). Mr. Carter is a manager in the City's Human Resources Department; Mr. Bennett, Mr. Braun, and Mr. Boisen were Divisional Administrators. Twelve of the interviewees, including Ms. Gillum, were placed on the City of Des Moines Civil Service Commission Eligible List ("eligibility list") for the position of Public Works Section Chief based on their oral interview rating. (Def. Ex. 16 [27-13] at 14). The eligibility list was certified on April 11, 2005 by the Des Moines Civil Service Commission and set to expire April 11, 2007. (*Id.* at 15). Before expiration, persons on the eligibility list receive preference for promotions. After

the list expires, a promotion will not be made until a new eligibility list has been certified.

Each of the twelve interviewees for the Section Chief positions received an oral interview rating, with lower numbers signifying a higher rating. Ms. Gillum received an oral interview rating of 7.5, placing her in a tie for seventh on the eligibility list. (Def. Ex. 16 [27-13] at 14). Ms. Gillum was not offered a position of Public Works Section Chief. Anthony Pirillo, Thomas Curtis, and Mark McCaune were chosen to fill the three positions. (*Id.* at 15). Mr. Pirillo received an oral interview rating of 3.25, placing him second on the eligibility list; Mr. Curtis received an oral interview rating of 7.5, placing him seventh and tied with Ms. Gillum on the eligibility list; and Mr. McCaune received an oral interview rating of 8, placing him ninth on the eligibility list. (*Id.*). Mr. Pirillo was promoted to a Section Chief position in the Sewer Maintenance Division on April 25, 2005; Mr. Curtis was promoted to a Section Chief position in the Street Cleaning Division on April 25, 2005; and Mr. McCaune was promoted to a Section Chief position in the Sewer Maintenance Division on October 16, 2006. William Stowe, Director of the Public Works, and the Administrator of the Division where the job opening existed, jointly made the final hiring decisions from the eligibility list.

In September 2008, the City announced there was another Section Chief job opening. Ms. Gillum submitted an application for

this position. Fifty-one people applied for the position; only one of the applicants - Ms. Gillum - was female.

Ms. Gillum was interviewed for the position on November 12, 2008 by an interview panel consisting of Mr. Carter, Greg Cloe, and Tim Merical. Mr. Cloe was at the time the Sanitation Administrator in the Public Works Department. Mr. Merical was a supervisor in the City of Urbandale, Iowa Public Works Department. It is appropriate to lay out in greater detail the process by which the 2008 Section Chief eligibility list was determined. The first step was to eliminate those who were not qualified because they were not permanent Civil Service employees. (Def. Sealed App. [29-1] at 2). This reduced the applicants to thirty-five, among them Ms. Gillum. (*Id.*) The second step was assignment of a numerical score representing a "rough determination" by human resources manager Carter based on his review of each applicant's job classification history, information in the application, and the applicant's training and experience. (*Id.*) This step further reduced the applicant pool to fifteen, again among them, Ms. Gillum. (*Id.*) The final, third step was the oral interview of the remaining fifteen applicants. At that point an applicant's interview performance was the sole determinant of whether an applicant was placed on the eligibility list for promotion. (*Id.*)

The interview consisted of asking each applicant ten questions, the same for each. (Def. Sealed App. [29-1, 29-2, 29-3]

at 2, 35-64). The interviewers independently scored the applicant's response to each question, giving a grade from 1 to 10, with 10 the highest. The score for each question was added up on each interviewer's question sheet for the applicant and the average of the three interviewers' total scores for an applicant was the overall interview score which determined placement on the list. The scores ranged from 81 to 61. (*Id.* at 17). Ms. Gillum scored a 66, tying her for twelfth. Only the top ten were put on the promotion eligibility list. (*Id.*)

Ms. Gillum received a letter from Mr. Carter dated November 14, 2008 informing her that her oral interview score was not high enough to place her among the top ten candidates and, as a result, she would not be placed on the eligibility list. The letter, identical to those received by the other four candidates who did not make the list, told her that the fact she was not placed on the list did not mean she was not qualified for promotion to Section Chief and expressed hope she would continue to participate in promotional opportunities. (Def. Sealed App. [29-1] at 30). The eligibility list would be effective for two years, during which time Ms. Gillum would not be considered for a promotion unless all persons on the eligibility list were unwilling or unable to fill the open position.

Michael Poland and Barry Garland were eventually promoted from the 2008 eligibility list to Section Chief positions. Mr.

Poland was promoted to Section Chief in the Street Cleaning area of Public Works on February 23, 2009. After the 2008 eligibility list was determined, a new Section Chief position was created. Mr. Garland was promoted to the new Section Chief position on March 2, 2009.

On November 24, 2008, after learning she did not make the 2008 eligibility list and would not be promoted to a Section Chief position for at least two years, Ms. Gillum submitted her resignation. She filed her Iowa Civil Rights Complaint on April 17, 2009.

## III.

### DISCUSSION

**A. Exhaustion of Administrative Remedies and Timeliness - Failure to Promote from the 2005 Eligibility List**

Ms. Gillum filed an Iowa Civil Rights Complaint on April 17, 2009, alleging discrimination on the basis of her sex for "failure to promote," as well as "forced to quit/retire" and "reduced pay," based on the City's failure to promote her in 2005 and 2008. (Def. Ex. A [27-11]). The adverse employment actions asserted by Ms. Gillum are the City's failure to promote her in 2005, the City's failure to place her on the eligibility list in November 2008, and her alleged constructive discharge when she resigned on November 24, 2008.

The City argues Ms. Gillum's sex discrimination claims under Title VII and the ICRA based on the promotions of Mr. Pirillo, Mr. Curtis, and Mr. McCaune in 2005 and 2006 are barred for failure to timely exhaust administrative remedies. Ms. Gillum contends that her claims are based on disparate impact and a pattern and practice of sex discrimination by the City and, therefore, her claims relating to these promotional decisions are not barred.

Claimants must timely file a discrimination charge with the EEOC or state agency before bringing a Title VII or ICRA action in court. *Duncan v. Delta Consol. Indus., Inc.*, 371 F.3d 1020, 1024 (8th Cir. 2004); *Neessen v. Arona Corp.*, 708 F. Supp. 2d 841, 857 (N.D. Iowa 2010); *McElroy v. State*, 703 N.W.2d 385, 391 (Iowa 2005); 42 U.S.C. § 2000e-5(e)(1). As applicable here, the period for filing a discrimination charge under Title VII as well as under the ICRA is within 300 days of the allegedly discriminatory act. *National R.R. Passenger Corp. v. Morgan*, 536 U.S. 101, 109 (2002) ("In a State that has an entity with the authority to grant or seek relief with respect to the alleged unlawful practice, an employee who initially files a grievance with the agency must file the charge with the EEOC within 300 days of the employment practice. ... A [Title VII] claim is time barred if it is not filed within these time limits."); 42 U.S.C. § 2000e-5(e)(1); Iowa Code § 216.15(13) ("[A] claim under this chapter [216] shall not be

10

maintained unless a complaint is filed with the commission within three hundred days after the alleged discriminatory or unfair practice occurred.").

When there are multiple allegedly discriminatory acts, the United States Supreme Court in *Morgan* held as follows:

> The existence of past acts and the employee's prior knowledge of their occurrence, however, does not bar employees from filing charges about related discrete acts so long as the acts are independently discriminatory and charges addressing those acts are themselves timely filed. Nor does the statute bar an employee from using the prior acts as background evidence in support of a timely claim.

536 U.S. at 113. The Supreme Court further held that "[d]iscrete acts such as termination, failure to promote, denial of transfer, or refusal to hire are easy to identify. Each incident of discrimination and each retaliatory adverse employment decision constitutes a separate actionable 'unlawful employment practice.'" *Id*. at 114. Importantly, the Court held "discrete discriminatory acts are not actionable if time barred, even when they are related to acts alleged in timely filed charges." *Id*. at 113. "Determining whether a plaintiff's charge is timely thus requires 'identifying precisely the unlawful employment practice of which he complains.'" *Lewis v. City of Chicago*, ___ U.S. ___, 130 S. Ct. 2191, 2197 (2010) (quoting *Delaware State College v. Ricks*, 449 U.S. 250, 257, 101 S.Ct. 498 (1980)).

Ms. Gillum argues that the analysis in *Morgan* is not applicable because her claim is based on an employment practice

that causes a disparate impact upon women.[1]   "Title VII ...

prohibits employers from using employment practices that cause a

disparate impact on the basis of [a protected class]."   *Id.* at

2195; 42 U.S.C. § 2000e-2(k)(1)(A)(i).   The disparate impact

provision of Title VII states:

> (1)(A) An unlawful employment practice based on disparate
> impact is established under this subchapter only if --
>
> (i) a complaining party demonstrates that a respondent
> uses a particular employment practice that causes a
> disparate impact on the basis of race, color, religion,
> sex, or national origin and the respondent fails to
> demonstrate that the challenged practice is job related
> for the position in question and consistent with business
> necessity.

"Thus, a plaintiff establishes a prima facie disparate-impact claim

by showing that the employer '*uses* a particular employment practice

---

[1] Ms. Gillum also characterizes her Complaint as asserting a
"pattern and practice" claim. Judges in our sister court, the
Northern District of Iowa, have held that pattern and practice
claims are reserved for class actions. *Elliot v. Color-Box, LLC*,
No. C03-1042, 2005 U.S. Dist. LEXIS 17299, *7-10 (N.D. Iowa Jan.
26, 2005); *Prochaska v. Color-Box, LLC*, No. C04-1009-LRR, 2005
U.S. Dist. LEXIS 17297, *10-13 (N.D. Iowa June 1, 2005); *see also
Bacon v. Honda of Am. Mfg.*, 370 F.3d 565, 575 (6th Cir. 2004).
Assuming for the sake of argument Ms. Gillum may bring an
individual pattern and practice claim, for the reasons given in
the disparate impact discussion, such a claim would not resurrect
her time-barred failure to promote claim with respect to the 2005
eligibility list. Moreover, the Court doubts the circumstances
involving the failure to promote her from the 2005 eligibility
list, and failure to put her on the 2008 eligibility list, would
suffice to prove a pattern and practice violation. *See Cooper v.
Federal Reserve Bank of Richmond*, 467 U.S. 867, 875-76
(1984)(isolated or sporadic discriminatory acts by the employer
are insufficient to establish a *prima facie* case of a pattern or
practice of discrimination); *EEOC v. Dial Corp.*, 469 F.3d 735,
741 (8th Cir. 2006)(more than an isolated act of discrimination
must be shown).

that causes a disparate impact' on one of the prohibited bases."
*Lewis*, 130 S. Ct. at 2197 (quoting 42 U.S.C. § 2000e-2(k)(1)(A)(i)). Further, "[u]nless and until the defendant pleads and proves a business-necessity defense, the plaintiff wins simply by showing the stated elements." *Id.* at 2198.

In *Lewis*, the Supreme Court held that defendant's use of exam scores as a hurdle for hiring firefighters qualified as an "employment practice" for purposes of a disparate impact claim where the exam score cutoff had a disproportionate impact on African-American applicants. *Id.* at 2199. The defendant's "decision to adopt the cutoff score (and to create a list of the applicants above it) gave rise to a freestanding disparate-impact claim." *Id.* Further, a new claim arises "[i]f petitioners could prove that the City 'use[d]' the 'practice' that 'causes a disparate impact.'" *Id.* at 2199, 2200 (rejecting the defendant's argument because under it "if an employer adopts an unlawful practice and no timely charge is brought, it can continue using the practice indefinitely, with impunity, despite ongoing disparate impact."). The Supreme Court concluded that "[b]y enacting § 2000e-2(k)(1)(A)(i), Congress allowed claims to be brought against an employer who uses a practice that causes disparate impact, whatever the employer's motives and whether or not he has employed the same practice in the past." *Id.* at 2200.

In her Complaint Ms. Gillum identifies the challenged employment practice as the "process of selecting those candidates to be placed on the promotion list for a Section Chief position, as well as their process for selecting those individuals eventually promoted to the Section Chief position, . . . ." (Complaint [1] at 5). As a preliminary observation, the evidence would not support a finding that the process of selecting candidates for the eligibility list caused a disparate impact on the basis of sex. Ms. Gillum applied for promotion twice. Once she was selected for the list and once not. There is no evidence any other qualified women were interested in promotion to a Section Chief position. If Ms. Gillum could mount a list selection disparate impact claim, the fact the employment practice excluded her in 2008 with respect to which she made a timely charge would allow her to go forward. *See Lewis*, \_\_\_ U.S. at \_\_\_\_, 130 S. Ct. at 2199, 2200. However, this would not mean Ms. Gillum could litigate an independent claim based on a discrete act that occurred outside the limitations period. Ms. Gillum's disparate impact argument does not save her claim for failure to promote in 2005 if that claim is time-barred.[2]

---

[2] To the extent Ms. Gillum so implies, the Court should note that *Lewis* does not hold that a plaintiff may use the disparate impact theory to litigate prior, time-barred impacts of a discriminatory practice merely because one impact was felt within the limitations period. The Court did not address this issue in *Lewis*. 130 S.Ct. at 2200-01 ("The first round of hiring firefighters occurred outside the charging period even for the earliest EEOC charge. Yet the District Court, applying the continuing-violation theory, awarded relief based on those acts.

Ms. Gillum also contends the City's discriminatory hiring process constitutes a continuing violation, and she can therefore recover for the entire period from 2005-2008 during which she was denied promotions. However, the Supreme Court's holding in *Morgan* is against Ms. Gillum's continuing violation theory. 536 U.S. at 114 (reversing the Ninth Circuit's holding that, under the continuing violations doctrine, "so long as one act falls within the charge filing period, discriminatory and retaliatory acts that are plausibly or sufficiently related to that act may also be considered for purposes of liability."). *Morgan* is clear that "all prior discrete discriminatory acts [that occurred outside Title VII's limitations period] are untimely filed and no longer actionable." *Id.* at 115. *See Betz v. Chertoff*, 578 F.3d 929, 937-38 (8th Cir. 2009). A failure to promote is a discrete act, and the timeliness of Ms. Gillum's claims for failure to promote and constructive discharge in 2008 does not save her 2005 failure to promote claim from being time-barred.

Finally on the subject of the events in 2005, Ms. Gillum argues her 2005 failure to promote claim is not time-barred because she could not have reasonably been aware of the discrimination until she was again passed over for a promotion in 2008. In substance Ms. Gillum asserts equitable tolling.

---

... We therefore leave it to the Seventh Circuit to determine ... whether the judgment must be modified in light of our decision.").

15

"Filing a timely charge of discrimination with the EEOC is not a jurisdictional prerequisite to initiating a Title VII action in federal court, but it is a requirement--like a statute of limitations--that is subject to waiver, estoppel, and equitable tolling. *Stoling v. Arkadelphia Human Dev. Ctr.*, 81 Fed. Appx. 83, 84 (8th Cir. 2003) (citing *Zipes v. Trans World Airlines, Inc.*, 455 U.S. 385, 393 (1982)). The Supreme Court noted its holding in *Morgan* was subject to equitable doctrines of tolling or estoppel, but those doctrines should "be applied sparingly." *Id*. at 113, 114, n.7 ("There may be circumstances where it will be difficult to determine when the time period should begin to run. One issue that may arise in such circumstances is whether the time begins to run when the injury occurs as opposed to when the injury reasonably should have been discovered. But this case presents no occasion to resolve that issue.").

"'Equitable tolling is a remedy reserved for circumstances that are truly beyond the control of the plaintiff.'" *Briley v. Carlin*, 172 F.3d 567, 570 (8th Cir. 1998) (quoting *Shempert v. Harwick Chem. Corp.*, 151 F.3d 793, 798 (8th Cir. 1998)). "Equitable tolling will extend a deadline missed due to an employee's excusable ignorance, but the doctrine is precluded once it is shown that the employee was generally aware of her rights." *Id*. (citing *Hamilton v. West*, 30 F.3d 992, 994 (8th Cir. 1994)). Further, the remedy is precluded "when it is shown that the

employee has 'general knowledge' of the right not to be discriminated against or the means of obtaining such knowledge." *Id*. (quoting *DeBrunner v. Midway Equip. Co.*, 803 F.2d 950, 952 (8th Cir. 1986)).

Ms. Gillum has said that when she was denied promotion from the 2005 eligibility list she did not at that time believe she had been discriminated against on the basis of sex. (Pl. App. [40-6] at 160.) It was not until she was denied placement on the eligibility list in 2008 that she concluded the City had unlawfully discriminated against her. However, Ms. Gillum was aware of all of the information pertaining to the failure to promote her from the 2005 list. She knew she had been denied a promotion. She knew she had been interviewed by an all-male panel and that three male candidates had received promotions. She knew who was promoted. She knew male supervisors had made the ultimate promotion decisions. She was, as far as the record indicates, aware of her right not to be discriminated against on the basis of sex. Her deposition indicates that at the time she was passed over she thought those who had been promoted were less qualified than her. (Def. App. [27-5] at 82-89). According to Ms. Gillum it was only in hindsight after her exclusion from the 2008 eligibility list that she formed the opinion she had been the victim of discrimination when not selected for promotion from the 2005 list. Equitable tolling would be the rule, not the exception, if the time

to file an administrative charge was tolled merely because a subsequent employment decision led an otherwise fully-informed employee to conclude an otherwise time-barred earlier decision had been discriminatory. A reasonable person in Ms. Gillum's position believing less-qualified men were promoted in preference to her from the 2005 eligibility list would have been aware her rights had been violated. *See Henderson v. Ford Motor Co.*, 403 F.3d 1026, 1033 (8th Cir. 2005).[3]

On the undisputed facts viewed favorably to Ms. Gillum the time for filing a charge based on the claim of failure to promote from the 2005 eligibility list is not equitably tolled. It follows from the foregoing discussion that summary judgment must be granted on the claim.

**B. Failure to Place on the 2008 Eligibility List or to Promote**

i. Title VII and ICRA

Title VII and ICRA prohibit employment discrimination on the basis of sex. 42 U.S.C. § 2000e-2; Iowa Code § 216.6(1)(a). Iowa courts look to federal case law under Title VII for guidance when deciding cases under ICRA. *See Lewis v. Heartland Inns of Am.,* L.L.C., 591 F.3d 1033, 1038 (8th Cir. 2010) (noting that the

---

[3] This case is therefore distinguishable from cases invoking equitable tolling where the plaintiff is unaware any act took place. *See Coons v. Mineta*, 410 F.3d 1036, 1041-42 (8th Cir. 2005)(concluding plaintiff made a cognizable threshold claim for equitable tolling where plaintiff was unaware that rehiring took place until four years after the alleged discriminatory rehiring).

plaintiff's ICRA and Title VII claims were "analytically indistingishable."); *Beard v. Southern Flying J, Inc.*, 266 F.3d 792, 798 (8th Cir. 2001) ("We evaluate [the plaintiff's sex discrimination] claims under Title VII and under the Iowa Civil Rights Act using the same legal principles.").

An employment discrimination case may survive summary judgment in one of two ways under both Title VII and ICRA. The plaintiff may produce what is generally referred to as "direct evidence" of discrimination, that is "evidence showing a specific link between the alleged discriminatory animus and the challenged decision, sufficient to support a finding by a reasonable fact finder that an illegitimate criterion actually motivated the adverse employment action." *Fields v. Shelter Mut. Ins. Co.*, 520 F.3d 859, 863 (8th Cir. 2008); *see Humphries v. Pulaski County Special School Dist.*, 580 F.3d 688, 692 (8th Cir. 2005); *Landals v. George A. Rolfes Co.*, 454 N.W.2d 891, 893 (Iowa 1990). There is no direct evidence of discrimination here, thus Ms. Gillum must rely on an inference of unlawful discrimination by employing the familiar burden shifting analysis outlined in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802-04 (1973), and discussed further below. *Humphries*, 580 F.3d at 692; *Fields*, 520 F.3d at 863-64; *see Smidt v. Porter*, 695 N.W.2d 9, 14 (Iowa 2005); *Casey's General Stores, Inc. v. Blackford*, 661 N.W.2d 515, 520 & n.3 (Iowa 2003).

Under the *McDonnell Douglas* framework, the plaintiff initially bears the burden of proving a prima facie case of discrimination. *See Cronquist v. City of Minneapolis*, 237 F.3d 920, 924 (8th Cir. 2001) (citing *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973)). To make out a prima facie case, the employee must establish (1) the employee was a member of a protected class; (2) the employee was qualified to perform the job; (3) the employee suffered an adverse employment action; and (4) it is more likely than not the adverse action was based on an improper motive, such as sex. *Hamer v. Iowa Civil Rights Com.*, 472 N.W.2d 259, 264 (Iowa 1991). If a prima facie case is shown, "a rebuttable presumption shifts the burden to the employer to articulate a legitimate, nondiscriminatory reason" for the adverse employment action. *Id.* If the employer articulates a legitimate nondiscriminatory reason, the plaintiff bears the burden of putting forward evidence that the employer's asserted reason is merely pretextual. *Id.; see Humphries*, 580 F.3d at 692-93. In this case it is first necessary to identify the relevant adverse employment action, a question which depends initially on an analysis of Ms. Gillum's constructive discharge claim.

ii. Constructive Discharge

Ms. Gillum contends her November 24, 2008 resignation amounted to a constructive discharge constituting an adverse employment action under Title VII and ICRA. The City responds the

facts do not make out a case of constructive discharge, but rather show no more than a voluntary resignation.  Ms. Gillum bears the burden of proving her resignation was a constructive discharge.

"'Constructive discharge occurs when an employer deliberately renders the employee's working conditions intolerable, thereby forcing her to quit.'" *Engel v. Rapid City Sch. Dist.*, 506 F.3d 1118, 1127 (8th Cir. 2007) (quoting *Tatum v. Ark. Dep't of Health*, 411 F.3d 955, 960 (8th Cir. 2005)).  "To make out a case of constructive discharge, [the plaintiff must] show that a reasonable person would have found her working conditions intolerable, and that [the employer] intended to make her resign or, at a minimum, that her resignation was reasonably foreseeable given the conditions under which she was working." *Betz v. Chertoff*, 578 F.3d 929, 936 (8th Cir. 2009) (citing *Reedy v. Quebecor Printing Eagle, Inc.*, 333 F.3d 906, 910 (8th Cir. 2003)).  Further, "'[t]he intolerability of working conditions is judged by an objective standard,' and to prevail on a constructive discharge claim, a plaintiff must show that his or her 'working conditions were rendered so objectionable that a reasonable person would have deemed resignation the only plausible alternative.'" *Id.* (quoting *Tatom v. Georgia-Pacific Corp.*, 228 F.3d 926, 932 (8th Cir. 2000)).  "To act reasonably, an employee has an obligation not to assume the worst and not to jump to conclusions too quickly." *Tidwell*, 93 F.3d at 494.

Viable constructive discharge claims usually involve a hostile work environment. *Betz*, 578 F.3d at 938. "The mere existence of discrimination will not normally constitute the kind of intolerable conditions that would make a reasonable person feel compelled to quit." 1 L. Larson, *Employment Discrimination*, § 15.08 at 15-32 (2d ed. 2010) (noting denial of promotion has generally not succeeded as the basis for a constructive discharge claim). That is not to say a persistent failure to promote could never be a basis for a constructive discharge. In *Tidwell* the Eighth Circuit recognized "where a better qualified employee is repeatedly turned down for promotions in favor of inferior candidates, we can foresee that a negative and degrading atmosphere sufficient to constitute constructive discharge might exist." 93 F.3d at 495. However, the "frustration and embarrassment of not being promoted" are not sufficient. *Id.* (quoting *West v. Marion Merrell Dow, Inc.*, 54 F.3d 493, 498 (8th Cir. 1995)).

There are a number of difficulties with Ms. Gillum's constructive discharge claim. In 2005 and 2006 she was passed over for a promotion three times in favor of what she believed to be less-qualified male employees. Ms. Gillum's own testimony, however, indicates that those promotions did not make her work atmosphere intolerable. She did not at that time conclude that sex was a factor and was determined to continue to work toward a promotion. (Pl. App. [40-6] at 160). It was only in 2008 when she

was excluded from the eligibility list that "she began to believe that she had been the victim of sex discrimination." (Pl. Brief [39-1] at 16). Ms. Gillum then abruptly resigned without having previously raised her concerns with her supervisors. *See Pugh v. Taco Bell Corp.*, Case No. 4:97CV0431 ERW, 1998 U.S. Dist. LEXIS 23607, *15 (E.D. Mo. Oct. 2, 1998). There is no indication her supervisors were in any way hostile to her. Beyond the failure to put Ms. Gillum on the 2008 promotion eligibility list, Ms. Gillum does not cite to anything else between 2005 and 2008 which would cause a reasonable person to believe her workplace had been made intolerable to the point that resignation was the only reasonable alternative. In the Court's judgment, the circumstances described by Ms. Gillum are legally insufficient to permit the jury to find a constructive discharge.

In the absence of proof sufficient to show a constructive discharge, the focus becomes the exclusion of Ms. Gillum from the 2008 eligibility list.

iii.  Prima Facie Case

To establish a prima facie claim of discrimination for failure to place her on the promotion eligibility list, Ms. Gillum must show:  (1) she is a member of a protected group; (2) she was qualified for promotion to Section Chief and applied to be placed on the eligibility list; (3) she was not placed on the eligibility list; and (4) employees similarly situated who are not part of the

23

protected group were placed on the eligibility list.  *See Moore v.*
*Forrest City Sch. Dist.*, 524 F.3d 879, 883 (8th Cir. 2008).  Ms.
Gillum only needs to show that she was "minimally qualified" for
promotion to Section Chief.  *Turner v. Honeywell*, 336 F.3d 716, 721
(8th Cir. 2008).

The City challenges the second and fourth elements of the
prima facie case.  On qualification it argues Ms. Gillum was not
qualified for the Section Chief position because Iowa civil service
law requires that all permanent promotional positions be filled
with City employees from the certified eligibility list, and when
Mr. Poland was promoted in February 2009 and Mr. Garland was
promoted in March 2009 Ms. Gillum was neither a City employee nor
on the eligibility list.  On the fourth element the City makes a
like argument.  Ms. Gillum was not similarly situated to Mr. Poland
and Mr. Garland because they were City employees on the eligibility
list, and at the time of their promotions Ms. Gillum was not a City
employee on the eligibility list.

Ms. Gillum's *prima facie* case is not defeated by the
facts she was not on the 2008 eligibility list and was not an
employee when Mr. Poland and Mr. Garland were promoted.  As Ms.
Gillum states in her brief, "the 'act' challenged was the all-male
interview panel's decision to exclude [her] from the 'final 10'
candidate list."  (Pl. Brief [39-1] at 23).  The facts, viewed
favorably to Ms. Gillum, demonstrate a *prima facie* case of sex

discrimination with respect to the decision not to place her on the 2008 eligibility list. She was the only female applicant. She was minimally qualified for promotion to Section Chief; she would not have been interviewed had she not been qualified. She was rejected. All of those selected for the eligibility list were similarly situated males who, like Ms. Gillum, were viewed as viable candidates for promotion.

iv. Nondiscriminatory Reason and Pretext

The legitimate non-discriminatory reason put forward by the City for not placing Ms. Gillum on the 2008 eligibility list is that the comparatively lower interview score which excluded her was the product of the interviewers' honest, independent assessment of her interview performance. This explanation shifts the burden to Ms. Gillum to produce evidence that the articulated reason was a pretext for discrimination.

The difficulty for the City at the pretext stage is a combination of three factors. First, Ms. Gillum was the only woman applicant. There were no other women in the mix who might have done better. Second, the sole determining factor for placement on the eligibility list was a subjective assessment by the three interviewers of Ms. Gillum's interview performance. (Def. Sealed App. [29-1] at 2). "[S]ubjective promotion procedures are susceptible of discriminatory abuse and require close scrutiny [though] subjectivity alone does not render an employment decision

infirm." *Brooks v. Ameren UE*, 345 F.3d 986, 987 (8th Cir. 2003) (citation omitted).  What the requisite closer scrutiny reveals is the third factor.

The Court has reviewed the interviewers' question sheets with their scores, notes, and comments for each of the fifteen applicants.  Different inferences can be drawn from them, and they do not foreclose the City's assertion that Ms. Gillum's interview scores represent just what the City says they represent, the honest assessment of her answers.  However, the interviewers' notes also reflect that in more than a few instances Ms. Gillum was graded substantially lower for what appear to have been answers to questions similar to those given by her higher-scoring male counterparts, or comments by an interviewer concerning an answer by Ms. Gillum which yielded a lower score than similar comments made about another applicant's answer to the same question.  In many cases no explanation is given for Ms. Gillum's comparatively lower score on an answer.  In their affidavits two of the three interviewers, Mr. Carter and Mr. Merical, give specific reasons for some of the scores they gave Ms. Gillum on her answers (*id.* at 33-34, 65-66), but overall, viewing the evidence favorably to Ms. Gillum, her lower scores are not explained with the clarity and specificity which might compel summary judgment.  *See Brooks*, 345 F.3d at 988.  The credence of the City's explanation is left in doubt.  This together with the *prima facie* elements and the fact

there is nothing else in the record but gender to distinguish Ms. Gillum, is sufficient for her to avoid summary judgment at the pretext stage. *See Reeves v. Sanderson Plumbing Products, Inc.*, 530 U.S. 133, 174 (2000); *Texas Dep't of Commun. Affairs v. Burdine*, 450 U.S. 248, 256 (1981).

## IV.

## CONCLUSION

Defendant City's Motion for Summary Judgment [27] is granted in part and denied in part, consistent with this opinion. The case will come on for trial as presently scheduled. The issue for trial is whether Ms. Gillum's sex played a part in the decision not to place her on the 2008 list of employees eligible for promotion to the position of Section Chief in the City's Public Works Department. Because that decision did not, as a matter of law, result in a constructive discharge, plaintiff will not be entitled to damages or other relief based on the termination of her employment.

IT IS SO ORDERED.

Dated this 30th day of March, 2011.

ROSS A. WALTERS
UNITED STATES MAGISTRATE JUDGE